UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JERRY GONZALEZ,

                               Plaintiff,

         - against -

AIRBORNE EXPRESS, INC.
and INTERNATIONAL BROTHERHOOD OF
TEAMSTERS AIR FREIGHT CHAUFFEURS,
HANDLERS, WAREHOUSEMEN & ALLIED
WORKERS UNION Nº 295,

                             Defendants.
-----------------------------------------------------------X

**MEMORANDUM and ORDER**

02 CV 3369 (SLT)(KAM)

**TOWNES, United States District Judge:**

On June 10, 2002, plaintiff, Jerry Gonzalez (hereinafter, "Plaintiff" or "Gonzalez"), commenced this action against his former employer, defendant, Airborne Express, Inc. (hereinafter, "Airborne"), and his former union, defendant, Local 295, International Brotherhood of Teamsters (hereinafter, "Defendant" or "the Union"), seeking relief from the termination of his employment in November 2001. In his complaint, Gonzalez alleged that the Union breached its duty of fair representation by failing to take his grievance over his termination to arbitration. (Compl., ¶¶ 44-46.) By stipulation and order, dated May 25, 2003, Plaintiff's cause of action against Airborne was dismissed with prejudice by District Judge Nicholas G. Garaufis. The Union has moved for summary judgment dismissing the complaint against it. For the reasons discussed herein, Defendant's motion is GRANTED.

## STATEMENT OF FACTS

From 1993 to November 12, 2001, Plaintiff drove and delivered packages for Airborne. (Defendant's Statement Pursuant to Local Rule 56.1 ("Def. 56.1 Stat."), ¶ 2; Turello Aff., ¶ 7.) The terms of the collective bargaining agreement between Airborne and the Union (hereinafter, the "CBA") set out the disciplinary procedure for Airborne employees. (*See* Turello Aff., Ex. A.) This procedure outlines the offenses for which employees will be disciplined, and their respective sanctions. *Id.* The offenses fall in four categories: from "Category A" to "Category D." *Id.* "Category A" is the most serious and warrants immediate termination. *Id.* In contrast, an employee will be suspended after he commits two "Category B" offenses, and is subject to termination if he commits three of these offenses within any 12-month period. *Id.* When an employee is disciplined, he receives a "letter" based on the category of the offense. *See infra.*

The CBA describes the offenses which could lead to the imposition of discipline against an employee. (CBA, pp. 100-05.) Relevant here are the following: Paragraph 2(b) makes it an offense of insubordination to intentionally refuse or fail "to follow reasonable and clear work directives"; Paragraph 2(d) makes it an offense to use "[a]busive profanity to customers or supervisors"; and Paragraph 2(e) makes it an offense to be willfully discourteous to customers.

Throughout his tenure with Airborne, Plaintiff was disciplined on numerous occasions. Most relevant to the instant motion are his 2000 and 2001

offenses. On August 10, 2000, Plaintiff's supervisor instructed him to deliver packages that were misdelivered earlier in the day. (Turello Aff., ¶ 11.) Rather than comply, Plaintiff walked out of the facility. *Id.* Airborne then issued him a "Category A" letter for "gross insubordination." *Id.* Forestalling the sanction of termination, Local 295 Business Agent Alfred Turello (hereinafter, "Turello") interceded on Plaintiff's behalf; his letter was reduced to a "Category B" infraction. (Turello Aff., ¶ 12.) On December 7, 2000, Plaintiff twice failed to properly scan high-value shipments. (Turello Aff., ¶¶ 13, 14.) Airborne issued Plaintiff two "Category B" letters for these offenses. Although Plaintiff was then subject to termination, he was permitted to work for ten days after the issuance of the third letter under the terms of the CBA. (Turello Aff., ¶ 15.) Eight days later, he failed to comply with his supervisor's direct orders to unload air freight containers. (Turello Aff., ¶ 16.) Airborne then issued a "Category A" letter, and terminated his employment. *Id.* Plaintiff filed a grievance regarding his termination. (Turello Aff., ¶ 17.)

On January 4, 2001, Turello attended a third-step grievance hearing, which is the last opportunity to resolve a grievance before arbitration, to discuss Plaintiff's discharge. *Id.* Turello successfully resolved the grievance; Airborne reduced Plaintiff's termination to a "time served suspension." *Id.* In resolution of this grievance, the parties agreed that his disciplinary status returned to step 1 of the "Category B" progression, effective August 10, 2000. (Turello Aff., Ex. F.)

3

Five months later, Airborne again disciplined Plaintiff for failing to scan a high-value shipment. (Turello Aff., ¶ 18.) This letter notified Plaintiff that this discipline brought him to step 3 of the grievance process, and that he was going to be terminated after the ten-day waiting period. (Turello Aff., ¶ 19.) Plaintiff grieved this termination. (Turello Aff., ¶ 20.) Turello then reminded Airborne that under the terms of the January 2001 grievance hearing agreement, this letter could only bring him to step 2 of the process. *Id.* Turello attended another third-step grievance hearing, as a result of which Plaintiff's termination was converted to a suspension. (Turello Aff., ¶ 21.) The written decision from this hearing, signed by an Airborne representative, Turello, and Plaintiff, notified Plaintiff that "[f]urther progression to the discharge step under category B violations and the employee will be discharged." (Turello Aff., Ex. H.)

In November 2001, Airborne terminated Plaintiff as a result of two separate incidents that occurred that month.

First, on November 1, 2001, when Plaintiff attempted to deliver a package to a location, the customer directed him to deliver the package to another floor. (*See* Def. 56.1 Stat., ¶ 12.; Plaintiff's Deposition ("Pl. Dep."), pp. 42-45.) He refused to do so. (Pl. Dep., p. 43; Turello Aff., ¶ 35.) Plaintiff claims that he was justified in not taking the package to another floor because his supervisor had advised him that delivering a package to another floor would count as a second delivery – one that he was not required to do. (Plaintiff's Declaration ("Pl. Dec."), ¶¶ 14, 15.) By e-mail, dated November 1, 2001, the

customer to whom the delivery was addressed complained to Airborne about this incident, stating that Plaintiff was "belligerent." (*See* Turello Aff., Ex. N.) In response, Airborne issued two "Category B" letters: one for discourtesy, the other for falsification of a delivery record. (Def. 56.1 Stat., ¶ 6; Plaintiff's Statement Pursuant to Local Rule 56.1 ("Pl. 56.1 Stat."), ¶ 6.) He was also issued a ten-day notice of termination. *Id.* Plaintiff claims that there is no evidence that Plaintiff was discourteous to the customer. (Def. 56.1 Stat., ¶ 21.)

Second, on the morning of November 12, 2001, Plaintiff refused to begin his delivery route and walked out of his employer's facility. (Def. 56.1 Stat., ¶ 8.) Plaintiff claims that his supervisor attempted to assign him to work that would have "violated the [CBA]." (Pl. 56.1 Stat., ¶ 8.) After Plaintiff refused, he claims he was terminated by his supervisor. *Id.* Plaintiff also claims that he is a legal beneficiary of the CBA and, therefore, he had a right under its "accommodation clause"[1] to leave work to arrive at his other job in a timely

---

[1] Section II(B)(1)(a) states in relevant part:

> The Company will continue its current practice with respect to accommodation, whereby any employee seeking an accommodation on account of school, second job, or family care commitments, files a written request for accommodation with the Company, whereupon the Company makes a good faith determination based on operational need, and with the understanding that an accommodation will not be unreasonably withheld. If the request is approved, then the resulting accommodation shall be valid for the entire bid period, and the employee will not be directed to work in a contrary manner.

(*See* Turello Aff., Ex A, p. 8.)

5

fashion. (Def. 56.1 Stat., ¶¶ 17, 18; Pl. 56.1 Stat., ¶¶ 17, 18.) Plaintiff claims that he had complained that Airborne was violating this clause with respect to him on prior occasions. (Def. 56.1 Stat., ¶ 19; Pl. 56.1 Stat., ¶ 19.) In any event, Airborne issued Plaintiff two "Category B" letters both for insubordination: one for failing to take out his route, and the other for using profanity when speaking to his supervisor. (Def. 56.1 Stat., ¶ 7; Pl. 56.1 Stat., ¶ 7; Turello Aff., ¶ 27.)

Although the parties agree that Plaintiff did not file a grievance about this "termination" (Def. 56.1 Stat., ¶ 9; Pl. 56.1 Stat., ¶ 9), they disagree as to whether he was required to do so. It is undisputed that the Union automatically grieved terminations. (Pl. 56.1 Stat., ¶ 9; Hayes Dep., p. 13.) Plaintiff claims that he relied on this procedure and, therefore, was not required to file a grievance. (Pl. 56.1 Stat., ¶ 9.) The Union Shop Steward John Hayes (hereinafter, "Hayes"), however, believed that Plaintiff had resigned when he left and, therefore, there was no need to initiate a grievance on his behalf. (Hayes Dep., pp. 14-15.)

On January 17, 2002, Plaintiff attended a third-step grievance hearing to discuss his reinstatement. (Def. 56.1 Stat., ¶ 10.) Turello and Hayes[2] met with Plaintiff before the hearing to discuss his grievance, and represented him at the hearing. *Id.* There, Plaintiff discussed the November 1, 2001 incident. (Pl. 56.1 Stat., ¶ 8.) Airborne conceded that the reprimand for falsifying

---

[2]The parties agree that Plaintiff has never had a dispute with Turello or Hayes and that they have no animosity toward him. (Def. 56.1 Stat., ¶ 16; Pl. 56.1 Stat., ¶ 16.)

documents could not be substantiated; it, however, found that the citation for discourtesy to a customer had merit. (Turello Aff., ¶ 43.) With respect to the November 12, 2001, incident, Airborne concluded that Plaintiff's conduct did not warrant a withdrawal of either of his letters for insubordination. (Turello Aff., ¶ 44.) The written decision of the grievance hearing states: "Termination for just cause. Employee violated last chance agreement dated August 14, 2001." (Turello Aff., Ex. O.)

After the grievance hearing, the Union decided not to take Plaintiff's grievance to arbitration. The Union made this decision after conferring with its counsel, Andrew S. Hoffman, Esq. (hereinafter, "Hoffman"), and other business agents. (Turello Aff., ¶ 45.) John Hayes, Plaintiff's shop steward, interviewed Plaintiff; the drivers present, including Ignacio Garcia; and Plaintiff's supervisor, Peter Sorrentino. (Hayes Dep., pp. 6-8.) Initially, after realizing that the arbitrator need only uphold two of the four "Category B" offenses in order to sustain Plaintiff's termination, the Union concluded that it "had no doubt that an arbitrator would find that Gonzalez was guilt [sic] of willful discourtesy when he refused the customer's request to deliver a package to a different floor" with respect to the November 1, 2001, letter. (Turello Aff., ¶ 46.) Regarding the November 12, 2001, letters, the Union "had no doubt that an arbitrator would find that Gonzalez was guilty of insubordination . . . [because he] had no right to refuse to take his route on the road." (Turello Aff., ¶ 47.) Third, it considered that "there is ample precedent for the proposition that

7

an employee who ... walks off the job is guilty of insubordination." *Id.* Finally, the Union considered that an arbitrator was likely to find that when Plaintiff left his workplace and failed to initiate his grievance within ten days, as is required by the CBA, his grievance was time-barred. (Turello Aff., ¶ 49.)

On or about January 31, 2002, the Union notified Plaintiff in writing that it would not take his grievance to arbitration. (Def. 56.1 Stat., ¶ 14; Pl. 56.1 Stat., ¶ 14.) In this letter, Deputy Trustee Michael Tobin informed Plaintiff that the Union and its counsel reviewed his grievance and together concluded that the Union would not take his grievance to arbitration because there was "no likelihood that [it] would be sustained." (Turello Aff., Ex. P.)

## DISCUSSION

*Summary Judgment Standard*

A court may grant a motion for summary judgment only if the evidence, which is to be viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact. *Samuels v. Mockry*, 77 F.3d. 34, 35 (2d Cir. 1996); Fed. R. Civ. P. 56(c). All ambiguities must be resolved in favor of the non-moving party. *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). The movant bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Adams v. Department of Juvenile Justice*, 143 F.3d 61, 65 (2d Cir. 1998). The burden then shifts to the non-movant, who must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586-87 (1986). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, speculation or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Plaintiff alleges that Defendant breached its duty of fair representation by failing to file a grievance regarding Plaintiff's termination.

*Duty of Fair Representation*

In the seminal case of *Vaca v. Sipes*, 386 U.S. 171, 194 (1967), the Supreme Court held that "[i]n administering the grievance . . . machinery as statutory agent of the employees, a union must, in good faith and in a nonarbaritrary manner, make decisions as to the merits of particular grievances." (citing *Humphrey v. Moore*, 375 U.S. 335, 349-50 (1964)). It explained that unions are afforded such latitude in their decision-making for the protection of the rights afforded to employees and employers through collective bargaining, which may be jeopardized "[i]f the individual employee could compel arbitration of his grievance regardless of its merit." *Id.* at 191. Placing this discretion in the hands of the employee would undermine "the settlement machinery provided by the contract . . . thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation." *Id.* As a result, the

Court held that discretion must rest in the hands of the union in determining whether to take an employee's grievance to arbitration:

> [I]f a union's decision that a particular grievance lacks sufficient merit to justify arbitration would constitute a breach of the duty of fair representation because a judge or jury later found the grievance meritorious, the union's incentive to settle such grievances short of arbitration would be seriously reduced. The dampening effect on the entire grievance procedure of this reduction of the union's freedom to settle claims in good faith would surely be substantial.

*Id.* at 192-93. In addition, "[u]nions must be given discretion in picking their fights because even when they are pursuing an individual grievance, they are still representing all their members, and they may rightly consider the impact on their future credibility that pursuing a particular grievance may have." *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1244 (7th Cir. 1997). Thus, the union has "room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45-46 (1998). "Judicial review of union action . . . must be highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities." *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (internal quotations omitted), *cert. denied*, 526 U.S. 1017 (1999).

Here, since there is no allegation that the Union acted in bad faith or in a discriminatory manner, the plaintiff must "set forth concrete, specific facts

10

from which one can infer a union's . . . arbitrary exercise of discretion." *Ramey v. District 141, Int'l Ass'n of Machinists & Aerospace Workers*, № 99-CV-4341 (ERK), 2002 U.S. Dist LEXIS 26670 (E.D.N.Y. Nov. 4, 2004) (Korman, C.J.) (quoting *Echeverri v. Starrett City, Inc.*, 1998 U.S. Dist. LEXIS 20136, at *7 (E.D.N.Y. Dec. 7, 1998)). "A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation." *Marquez*, 525 U.S. at 46; *see also Caputo v. Nat'l Ass'n of Letter Carriers*, 730 F. Supp. 1221, 1226 (E.D.N.Y. 1990) (Glasser, J.) ("[T]he Second Circuit has held that decisions made without a rational basis are arbitrary and therefore actionable."). In other words, "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l*, 499 U.S. at 67 (citations and internal quotation marks omitted). Additionally, to succeed on a claim on the theory that a union's conduct was arbitrary, a plaintiff must not only establish the arbitrariness of the union's actions, but must also demonstrate a causal connection between the union's wrongful conduct and his injury. *Spellacy*, 156 F.3d at 126.

But "proof of mere negligence or errors of judgment on the part of the union is insufficient [to prove a breach of the duty of fair representation claim] . . . . As long as the union acts in good faith, courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular advantage." *Cook v. Pan Am. World Airways,*

*Inc.*, 771 F.2d 635, 645 (2d Cir. 1985), *cert. denied*, 474 U.S. 1109 (1986).

Accordingly, a union does not breach its duty of fair representation when it "fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1153-54 (2d Cir. 1994); *see also Wozniak v. Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of America-UAW*, 842 F.2d 633, 636 (2d Cir. 1988) ("There is no arbitrariness in failing to process a bad case.") (citing *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1214-15 (9th Cir. 1980)).

### *Discourtesy Letter*

Plaintiff does not dispute that a letter from a customer with complaints was received by his employer. He argues that his letter for discourtesy could not stand in arbitration because, had the union fully investigated the incident, the union would have found that Plaintiff was not in fact discourteous. Even if the union was negligent in its investigation of the incident, the Union cannot be held liable for breach of its duty of fair representation. *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43-44 (2d Cir.), *cert. denied*, 493 U.S. 975 (1989) (tactical decisions regarding how the union investigated the plaintiff's grievance are not arbitrary or in bad faith); *Lapir v. Maimonides Medical Center*, 750 F. Supp 1171, 1177 (E.D.N.Y. 1990) (Sifton, J.) (due to the relative weakness of the plaintiff's case, defendant union's failure to

investigate the plaintiff's defense was at most a tactical error and therefore not arbitrary).

Moreover, Plaintiff has not put forward any evidence that he was harmed by the Union's conduct. In fact, in his brief he stated that he used "poor judgment" on that day, and, in his deposition, that no rule or policy permitted him to tell a customer that the package would be redelivered after the customer requested him to deliver the package to another floor. (*See* Pl. Mem., p. 13; Gonzalez Dep., p. 47.) Further, Plaintiff has not identified any information or favorable witnesses the Union would have discovered as a result of further investigation. Consequently, there can be no genuine issue of material fact with respect to whether the Union's decision not to bring a grievance over this letter to arbitration was irrational.

*November 12, 2001, Incident Letters*

With respect to the disciplinary letters for the November 12, 2001, incident, the parties go to great lengths to demonstrate the proper interpretation and analysis of the "accommodation clause." Defendant argues that even if it failed to apply this clause correctly, Plaintiff was not permitted to walk off his job. Rather, he should have followed the "work now, grieve later" rule. Defendant supports this argument with Hoffman's analysis of past arbitration decisions. Plaintiff argues that this suggestion is "ludicrous" because he had repeatedly grieved when he worked in excess of his five-hour shift to no avail.

13

Here, however, Plaintiff was not accused of failing to work beyond the regular hours of his shift. His offense was refusing to take out his route after being directed to do so by his supervisor "three or four times" because Plaintiff decided that he "wouldn't be able to finish the routes according to [his] work schedule." (Hayes Dep., pp. 28-29.)

"A union's conduct may not be deemed arbitrary simply because of an error in evaluating the merits of a grievance . . . ." *Ehrenburg v. Outokumpu Am. Brass, Inc.*, 808 F.Supp 973, 978 (W.D.N.Y. 1992); *see also Peterson v. Kennedy*, 771 F.2d 1244, 1254 (9th Cir. 1985), *cert. denied*, 475 U.S. 1122 (1986) ("unions are not liable for good faith, non-discriminatory errors of judgment made in the processing of grievances."). In *Spellacy*, 156 F.3d at 127, the Second Circuit held that a union's interpretation of a collective bargaining agreement need not be correct on the merits; rather, it must have been based on "an informed, reasoned judgment regarding the merits of the [plaintiff's] claim in light of the language contained in the [CBA]." (citing *Tedford v. Peabody Coal Co.*, 533 F.2d 952, 957 (5th Cir. 1976)). On the other hand, in *Caputo*, 730 F.Supp. at 1226, this Court held that where the defendant fails to demonstrate that it "exercise[d] its judgment, i.e., . . . [considered] relevant factors" in making its decision not to take a grievance to arbitration, its motion for summary judgment should be denied.

It is undisputed that Sorrentino and Garcia told Hayes that Plaintiff resigned rather than take out his route on November 12, 2001. Further, Garcia stated that he heard the argument that ensued when Sorrentino repeatedly

directed Plaintiff to go out on the road. According to Hayes, the Union was aware of Garcia's account that Plaintiff told his supervisor: "Fuck you, I quit, I don't have to put up with this bullshit anymore ...." (Hayes Dep., p. 30.) Plaintiff disputes this account. Although this Court is required to resolve all factual inferences in Plaintiff's favor on a motion for summary judgment and, therefore, cannot credit Garcia's and Sorrentino's accounts on this motion, Plaintiff does not dispute that the Union was aware of these accounts when it considered his case. It was not irrational for the Union to find that these accounts were more credible and that an arbitrator might be persuaded by them.

Additionally, upon an independent review of the record, the Court concludes that the Union did not act arbitrarily when it declined to arbitrate Plaintiff's grievance. In light of his long disciplinary history, case law in this Circuit supports the proposition that where an employee has such a history, a union's decision not to take an employee's grievance to arbitration is not arbitrary. See Wozniak, 842 F.2d at 636 (noting that where plaintiff engaged in "obviously improper conduct," it was "difficult to conceive" of the union pursuing the plaintiff's grievance); Blossomgame v. New York's Health and Human Service Union, Nº 02-CV-1594 (ETB), 2004 U.S. Dist LEXIS 18246 (E.D.N.Y. Sept. 10, 2004) (Boyle, Mag.J.) (recommending granting summary judgment to defendant union because in light of the many infractions in the plaintiff's disciplinary record, it was reasonable to decline to pursue her claim to arbitration); Smith v. Drug, Chemical, Cosmetic, Plastics & Affiliated Indus.

*Warehouse Employees Local 815*, 943 F. Supp. 224, 242 (E.D.N.Y. 1996) (Orenstein, Mag.J.) (recommending that union's decision was not arbitrary because it "took into account plaintiff's poor work history, including multiple warning notices and/or suspensions for insubordination.").

Based upon the facts of this case, the Union concluded that Plaintiff's claims were meritless. Because Plaintiff has been unable to demonstrate otherwise, the Union's actions were not arbitrary. *Melendy v. United States Postal Serv.*, 589 F.2d 256, 260 (7th Cir. 1978).

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment dismissing Plaintiff's first cause of action, alleging that the Union breached its duty of fair representation of Plaintiff, is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
January 4, 2006

/SANDRA L. TOWNES
United States District Judge